[Civ. No. 16543. Second Dist., Div. One. Feb. 18, 1949.]

CHARLES INGRAO et al., Respondents, v. HARRY KARSTEN et al., Appellants.

A. G. Van Deventer for Appellants.

Arnold L. Leader and Leonard Wilson for Respondents.

WHITE, J.—This is an appeal from an order denying a motion to vacate, recall and quash a writ of execution which had been issued in enforcement of a judgment entered pursuant to an agreement made in settlement of certain litigation. It is the contention of appellants that the agreement was modified by certain amended escrow instructions, that the

judgment should have been modified to conform thereto, that respondents failed to perform under the agreement as allegedly amended, and that such failure prevented appellants from making the payments required by the judgment.

In January, 1945, Catherine L. Ingrao and Florence Karsten constructed a building and commenced the operation of a restaurant known as the "Venetian Dining Room and Gardens" in the city of Altadena, Los Angeles County. They also purchased a residence in Altadena and two unimproved lots, known respectively as the "Holliston" lot and the "Foothill" lot, title to the latter being taken in the name of Florence Karsten only. In financing these operations, they borrowed money, and at the time the settlement was reached there were outstanding two bank loans, one for approximately $19,000 secured by a pledge of stock and other personal property owned separately by respondent Catherine Ingrao, and the other for approximately $15,800, secured by a trust deed on the restaurant property.

Disputes between the parties led to the filing of two actions by Catherine Ingrao and her husband against Florence Karsten and her husband in the Superior Court of Los Angeles County, No. 528034 for an accounting and appointment of receiver for the restaurant, and No. 528035 to establish a trust in the remaining properties held in joint tenancy and in the name of appellant Florence Karsten.

The agreement by which the parties attempted to settle their differences may be summarized as follows: After reciting the purchase of the properties, a controversy as to the amounts contributed respectively by them, the existence of the loans heretofore mentioned, the pendency of the litigation, and the desire of the parties to effect a complete and final adjustment, settlement and satisfaction of all their respective rights, it was agreed: (1) The Ingraos transferred all interest in the Venetian Dining Room to the Karstens; (2) the Karstens transferred to Catherine Ingrao the residence property and all household furniture, with certain exceptions; (3) Karstens transferred to Catherine Ingrao all interest in the Holliston and Footholl lots; (4) Karstens agreed to indemnify the Ingraos against any liability in connection with the Venetian Dining Room; (5) Ingraos agreed to indemnify Karstens against any liability in connection with the residence property and to assume and pay when due an incumbrance thereon. (6) Karstens agreed "to pay to Catherine L. Ingrao the total sum of Twenty-five Thousand Dollars ($25,000.00), in cash,

payable as follows: Ten Thousand Dollars ($10,000.00) upon the complete signing of this agreement, receipt of which hereby is acknowledged by Catherine L. Ingrao; Ten Thousand Dollars ($10,000.00) prior to the close of a thirty (30) day escrow which is to be opened forthwith in connection with the transfer of titles hereinabove agreed upon; and the balance of Five Thousand Dollars ($5,000.00) on or before November 1, 1947.''

It was further provided: (7) Karstens agreed that prior to February 1, 1948, they would pay or refinance the $19,000 loan so as to permit Catherine Ingrao to withdraw her pledged securities; (8) at any time prior to full payment of the $15,800 loan Catherine Ingrao might pay or refinance the same and obtain from Karstens their note for the amount paid by her, secured by a trust deed and chattel mortgage on the Venetian Dining Room; (9) that at any time prior to its full payment, Catherine Ingrao might pay or refinance both the $19,000 loan and the $15,800 loan and obtain from Karstens their note for the amount paid by her, secured by a trust deed and chattel mortgage on the Venetian Dining Room; (10) upon such payment or refinancing by Catherine Ingrao and the execution of the note and trust deed and chattel mortgage by Karstens, then Karstens should be released from their obligation under the agreement (7 above) to repay or refinance the $19,000 loan, and Ingraos should cause the bank to release Karstens from liability under said $19,000 obligation.

The agreement then provided that an escrow ''or escrows'' should be opened forthwith for the purpose of complying with section 3440 of the Civil Code, delivering instruments' of title, and securing title insurance. Paragraph XI of the agreement provided, so far as pertinent, that ''An appropriate judgment shall be entered forthwith in said cases Nos. 528034 and 528035, which are now set for trial in Department Pasadena 'B' of the Superior Court . . . which shall conform to the terms of agreement as herein set forth, and . . . .''

The agreement was executed by all parties on July 31, 1947. On August 12, 1947, the parties entered into an escrow and Karstens paid the $10,000 cash required by the terms of the agreement. On August 28, 1947, the trial judge signed, and on September 2, 1947, there was entered, in action No. 528034, a judgment in conformity with the terms of the aforesaid agreement, quieting the respective titles of the parties, incorporating the agreement as part of the judgment

and directing the parties to perform their promises thereunder, and further providing that Catherine L. Ingrao recover from the defendants Harry and Florence Karsten, $15,000, payable $10,000 on or before September 12, 1947, and $5,000 on or before November 1, 1947.

On August 27, 1947, all parties executed an amendment to their previous escrow instructions, reading, so far as pertinent, as follows:

"Original escrow Instructions August 12, 1947, and amendments thereto, are hereby amended and superseded to read as follows:

"That I elect to convey title to property being conveyed herein prior to 9-12-47, SUBJECT To a Note in the amount of $34,800.00, secured by a Mortgage of Chattel and Purchase Money Deed of Trust in favor of CATHERINE L. INGRAO, a married woman, as her separate property; . . .

"The foregoing amendment is accepted upon the following conditions:

"1. That Catherine L. Ingrao shall pay into this escrow the sum of $34,800.00, plus interest, for payment to Altadena Branch, Security-First National Bank of Los Angeles, the sum of $19,000.00, plus interest; and to the Head Office, Pasadena First National Bank, the sum of $15,800.00, plus interest; . . . ."

On October 20, 1947, upon affidavit of one of plaintiffs' attorneys that the $10,000 agreed to be paid by defendants (due September 12 under the terms of the judgment, or 30 days after opening of escrow on August 12, as provided by the agreement) remained unpaid, it was ordered that execution issue. Thereafter defendants moved to vacate, recall and quash the writ of execution on the ground that it was premature, in that defendants were not in default for the reason that the agreement upon which the judgment rested had been materially changed and that plaintiffs were in default. In support of the motion defendants averred by affidavit that because of the failure of plaintiffs to comply with the escrow instructions as amended defendants were prevented from completing the agreement, that the escrow could not be closed; and further alleged:

"The said amendment reflected in said Exhibit A is an important, substantial and material departure from the original agreement between the parties in the following respects and for the following reasons:

"1. It was originally agreed that Defendants were to pay an obligation jointly created by all parties in favor of the Security-First National Bank in the sum of $19,000.00, and a like joint obligation in favor of the Pasadena First National Bank in the sum of $15,800.00, the obligations of Affiants on said indebtedness being the obligations of a joint debtor, and under the first proposed plan, Affiants were given the right to encumber the real property in any manner which they might see fit;

"2. By virtue of the said amendment, Plaintiffs undertook and agreed to personally pay and discharge the said indebtedness to the Security-First National Bank and the said indebtedness to the Pasadena First National Bank, and to accept from Affiants a note for the combined amount of such indebtedness, to-wit, $34,800.00, to be secured by a Deed of Trust on the said real property, and a chattel mortgage on personalty;

"3. Unless and until Plaintiffs pay and discharge the said $19,000.00 obligation, and the said $15,800.00 obligation, Affiants cannot execute the note and deed of trust to Plaintiffs for $34,800.00, for the reason that by so doing, Affiants would be indebted in the total sum of $69,600.00, or twice the amount which Affiants originally agreed, or have at any time since agreed, to assume;

"4. That before said encumbrance of $34,800.00 to Plaintiffs can be lawfully executed insofar as that portion thereof which is required to be a chattel mortgage as security is concerned, it will be necessary for Plaintiffs to file an Intention to Chattel Mortgage under Section 3440 of the Civil Code, the original Intention to Mortgage having been published only for the sum of $15,800.00;

"And that Plaintiffs have done none of these acts, and therefore Affiants cannot proceed further with the closing of the said escrow. . . ."

The only difference between the judgment and the agreement with respect to the payment of the $10,000 was that the agreement provided for its payment on or before 30 days after the opening of an escrow, while the judgment specified the date of September 12. The parties having opened the escrow on August 12, prior to the filing and entry of the judgment, the date when the $10,000 would be due was thus made definite. The judgment was prepared accordingly and "approved" by defendants' then attorneys.

It is argued by appellants that ''On August 28, 1947, when the stipulated judgment was signed and filed, the departure of the judgment from the terms of the agreement was of no apparent consequence, and would have been of no consequence if Plaintiffs had complied with their obligation to deposit $34,800.00 in cash in the escrow prior to September 12, 1947, as they agreed to do by the amendment of August 27, 1947. On the date of the said judgment, all parties were bound to close the escrow 30 days after August 12, 1947. In other words, there were then 15 days left in which all parties could perform in the escrow.

''However, when Plaintiffs (Respondents) failed to deposit the $34,800.00 in the escrow and pay off the $15,800.00 and the $19,000.00 notes and liens, they hindered Defendants' (Appellants') ability to close the escrow in this, the Defendants being then on $34,800.00 of encumbrances jointly with the Plaintiffs, their credit was so impaired that they were unable to raise the additional sums which they required, nor were they at liberty themselves to refinance the property. . . .''

■ Appellants' position is unsound. By the original agreement Karstens undertook to pay or refinance the $19,000 loan before February 1, 1948, and Catherine Ingrao was given an option to pay or refinance either or both loans, in which latter event she was to be reimbursed by the Karstens' execution of a secured note for the amounts paid by her. The promise of Karstens to pay $25,000, $10,000 at the time of execution of the agreement, $10,000 at the close of the 30-day escrow and $5,000 before November 1, 1947, was in no way conditional upon any act or performance by the Ingraos with respect to paying or refinancing the loans; on the contrary, the ultimate burden thereof was to be borne by the Karstens, who were required either to make payment themselves or reimburse Catherine Ingrao in the event payment was made by her. Nothing that the Ingraos might do or refrain from doing with respect to protecting themselves on the two loans could affect the obligation of the Karstens to pay the $25,000 called for by the agreement.

There is no merit to appellants' argument that the failure of respondents to deposit in escrow the funds called for by the amended instructions hindered appellants' ability to pay by impairing their credit, since upon payment of the outstanding notes they would be then obligated under a new note to Catherine Ingrao for the same amount. The statement in appellants' affidavit that they could not execute the

$34,800 note to Catherine Ingrao because they would then be indebted for $69,600 is patently erroneous, since such notes would be merely deposited in escrow for delivery upon cancellation of the indebtedness which was being paid off.

There is under the terms of the agreement no relationship between the obligation to pay the respective sums of $10,000 and $5,000 on the one hand, and the refinancing of the outstanding loans on the other. The sole purpose of the escrow contemplated by the agreement was to accomplish execution and delivery of the documents required to vest and insure the various titles in the manner agreed upon. Appellants were placed in no worse position than they would have been had the Ingraos, as they could have under the agreement, done nothing during the 30-day period toward refinancing the loans. There is no claim that the respondents did not deposit in this escrow all documents required of them under the terms of the agreement. The amendment to the escrow instructions simply shows that the Ingraos proposed to refinance the loans, an option granted them under the terms of the agreement, but which they were not bound to exercise, and whether they exercised it or not, the obligation of the Karstens to pay the cash remained unchanged. Further lending support to our view is the fact that the judgment presented to the court for signing and entry on August 28, 1947, one day after the escrow instructions were amended, was approved by appellants' then attorneys.

The order of October 30, 1947, denying defendants' motion for order vacating previous order for issuance of writ of execution and to recall and quash writ of execution issued pursuant thereto, is affirmed.

York, P. J., and Doran, J., concurred.

A petition for a rehearing was denied March 7, 1949, and appellants' petition for hearing by the Supreme Court was denied April 18, 1949.